Thank you. Please be seated. Mr McNeil. Good morning.  In People v. Lindley, Justice Shostak wrote that an investigatory stop need not be based on personal observations by the officer conducting the stop. The stop may also be based on information received from members of the public. The informant's tip must bear some indicia of reliability, however. In order to justify the stop, whether a tip is sufficient to support the stop is not determined according to any rigid test, but rather on the totality of the circumstances. Let's look at the totality of the circumstances in this case. Isn't it a little different than Lindley? Yes, it is different from Lindley. In Lindley, there was an anonymous report... Excuse me, counsel. I'm having trouble hearing you. Could you adjust the microphone and keep your voice up? We have a fan on the ceiling. Please. All right. Is this better? Yes. And speak loudly. In Lindley, there was an anonymous report of gunfire, and the officer had no personal knowledge or corroboration when he got to the scene. Here, there was corroboration by the officers personally when they did arrive at the scene. They received a dispatch about a hit and run. They approached the scene, or where the report said the scene was. There's a crowd of people around a car parked in the middle of the road. Directly, when the police showed up, two men flee the scene. Several people next to the SUV yelled at the running men, saying, That's them. That's them. Unlike Lindley, where the officers just pull up. They received a report that there was gunfire at a local bar. Instead, they pull up to a group in a personal driveway. There was no report or any corroboration that there was a gun ever fired. Here, there was at least some evidence that there was a hit and run accident, judging by, although the SUV was parked in the middle of the road and there was a crowd around it, there was also some evidence that there was a victim in this hit and run accident. Excuse me. Where in the record is there evidence Officer Phillips didn't testify any place that she saw a victim, did she? Indirectly, like I said, there's only a slight bit, but Officer Bernard testified that at the scene he heard from Officer Phillips that the victim in the accident was receiving medical attention. So as far as direct evidence of a victim, that's all. That's all there was. But again, with the totality of the circumstances, looking at the crowd, a car parked in the middle of the street at 430 in the morning and the crowd saying, That's them. That's them. It was reasonable for the police officers to believe that the people fleeing the scene were responsible for the hit and run accident. But only one officer arrived first, correct? The other one we don't know when the other officer arrived. So it was Officer Phillips who arrived and then said what she saw as she turned the corner or approached near there, just saw two people running. Now, if it was a hit and run accident, doesn't that mean that somebody immediately upon causing the accident would have fled the scene? So isn't what she saw inconsistent with the information in the dispatch? Slightly, yes. Again, I think it would be reasonable for if the accident happened with the SUV, maybe the drivers would have gotten out or maybe returned to the scene after the accident occurred. The actual dispatch was a personal injury accident at that scene. She inferred from the information she obtained when she got there, people pointing and saying that they were the people responsible for the accident and therefore they're fleeing. Wasn't the dispatch to a personal injury accident at that scene? Yes, and I think that actually supports Mrs. Phillips' testimony more than it being a hit and run. If it's just a personal, if it's just an accident involving personal injury, maybe she wasn't testifying, she wasn't distinguishing the legal difference between the hit and run and just a personal accident. Maybe she just said the common phrase hit and run as she's testifying. And there's also, in Phillips' testimony, she doesn't mention the victim. But like I said, she doesn't mention that she didn't see a victim. And Officer Bernard testified that he heard Phillips from over the radio say that the victim in the accident was receiving medical attention. So I think it can be inferred that Phillips did observe a victim. She was just never asked any questions concerning the victim. Now, who went into the house first, Barnard, right, Bernard? He was, it's slightly unclear, but he discovered that the door in the basement was open. And he went in. He knocked on the window and he went in before Officer Phillips went in, correct? Isn't that what the record reflects? He might have gone in, yes, because he noticed another person in the basement that wasn't part of the, wasn't one of the two men fleeing the scene. So, yes, there was testimony that Officer Bernard did go in before Officer Phillips. But the door was open, not just unlocked, but open. Well, let's assume for a minute that there wasn't probable cause. Do you want to address one of those? That there was no probable cause? Right. Do you want to address the issue in Holloway? That is one of the questions we asked, whether we should adopt the rules set forth in United States Court of Appeals for the 11th Circuit in Holloway, that a police officer may make a warrantless entry without probable cause to arrest in cases involving exigent circumstances, such that the officer reasonably believed that there was someone in there in danger. And I think that's the important part of Holloway, is that the officers, they're not, there doesn't need to be actual danger, there just needs to be a reasonable belief that the people are in danger. In Holloway, just like here, there wasn't actual danger when the police officers showed up, but there was a reasonable belief of actual danger. In Holloway, I think the defendant, there was a report that the defendant was firing ongoing gunshots at his place and ongoing arguments. So the gunshots versus what happened here, how can there be reasonable belief that there was danger in this case? There was no reasonable belief that the defendant was armed here, but there was, I think there was a reasonable belief that the defendant was dangerous because... Because he hit and ran? Well, he fleed the scene of an accident or a crime scene. It was 4.30 in the morning, and I think important to the facts is that he was knocking on the door for a couple minutes before the door opened. He quickly ran in and quickly locked it. Well, it was his house, wasn't it? Yes. So how would that contribute to the fact that... Well, I think the reasonable police officer would infer that if it was his own house, he would have keys and he wouldn't have to bang on the door to his own house. So that, along with it being so close to the accident scene, it was reasonable for the officers to believe 4.30 in the morning, somebody wanted to avoid the police, run to a nearby house, bang on the door when somebody opens to see what's going on, dart in, lock the door. And at that point... And there's also subjective testimonies. Their subjective state of mind is that they didn't believe that it was his own house and that the people were in danger. I think the subjective state of mind should be taken into the totality of the circumstances here, especially when the police officer's state of mind is a reasonable belief as it was here. I mean, looking at all the... At the totality of the circumstances, like I said, 4.30 in the morning, defendant running from an accident scene, banging on the door, highly unusual for their own house, so... He also had failed to heed her demands to stop... Correct. ...on several occasions while they were running and while he was on the porch. Correct. And, obviously, she started banging on the door after that and there was no answer. So it's reasonable for both police officers to infer that the people inside were in danger. I think even more so than in Holloway where the police show up. There was gunfire, which is more drastic than here when there's no reason to believe the defendant was armed. Well, isn't it equally reasonable to believe that if he was fleeing, he would have continued to run? That he stopped at this house because it was his house, he knew somebody would let him in, and that's why he was knocking on the door. If he had no connection at all to this house, he would have continued running. Why would he stop there? It wasn't that far from the scene. So isn't it equally reasonable to assume that? Unless he expected somebody to let him in? Well, I think that would be a judgment call, and I think that at 4.30 in the morning, somebody who refuses police commands to stop fleeing the scene of an accident, their primary concern is avoiding the police, and I think it would be better safe than sorry for the police to enter the house, especially if it wasn't his own house, as it could be reasonably inferred. And didn't the police go into that house to arrest him? Wasn't that the main reason that they went in? According to the trial court, that's what they found, but according to their own testimony, they were in danger. They feared the safety of the people inside the house, and they didn't think that it was defendant's house. I think that's what it boils down to. If they didn't think that it was defendant's house, then obviously it's reasonable that the people inside would be in danger because that means he would just ran to a nearby house and lock the door. Another reason why he wouldn't have just kept running is he locked the door quickly behind him, indicating that maybe he was going to wait it out there. And let me just go over one other point. You had said you believed that there was reason to believe this defendant was dangerous. Yes. And dangerous because why? He was not armed. There's no evidence that he was armed. Correct. And why was he, why was that a reasonable belief? He refused, he ran from the scene. So flight equals danger. Flight, not by itself, looking at the totality of the circumstances, he ran from the scene. It was late at night, and he went into a house that presumably wasn't his. So for the people inside the house, there was no response when they knocked on the door, when Officer Phillips knocked on the door. So presumably he could have been threatening them or ensuring that they weren't going to make any noise or let the cops in, let the police in when they were knocking. So that's a reasonable belief in danger. Is this an exigent circumstances case or a hot pursuit case? It's exigent circumstances, I would say. In the alternative, though, it would be hot pursuit. Assuming that there was probable cause, there was definitely hot pursuit. Assuming that they believed it was the defendant's house. Do you believe that it needs to be a grave offense before an officer is allowed to enter a residence? No. I think I cited the factors in People v. Abney. This Court cited those factors in People v. Leach also. And the Abney Court makes sure to say that the presence of all the factors in a given situation isn't necessary. A grave offense is just one of the factors, arguably one of the weaker ones in this case, but the rest support. What about People v. Ware? It says a DUI arrest, a probable cause for DUI satisfies hot pursuit. When an arrest begins in a public place, it can continue into a residence to complete the arrest that began in public. Correct. And this is the same classification of offense, if not worse. Right. Leaving the scene is a felony. And unlike Ware, here there was personal observation of the police personally observing the felony being committed. I think there would be even… Well, they personally observed a portion of it. She didn't see the accident, but she saw the flight. Correct. So in Ware, they just had a report of a DUI. Well, I think in Ware that he did follow the person to his house. But again, here, in Ware, the officers knew that there was no danger to the people in the house. Here, not only do we have a defendant running, we have a defendant presumably running into a random house at 4.30 in the morning. Is it your position that the trial court was properly found probable cause but incorrectly found it because it was not a grave offense that the police officers should not have entered? Is that your position? That's correct. I'm not sure if the trial court specifically found that it wasn't a grave offense. I could be wrong. But, yes, my stance would be that there is probable cause. And because of that, there was hot pursuit in the alternative to the accident circumstances that authorized. Thank you, counsel. You'll have an opportunity for rebuttal. Mr. Levine? Good morning. Good morning. The state had the burden in the trial court of proving both that there was an exigent circumstance for entering Mr. Perez's house and also that there was probable cause to arrest him at all, even without entering the house. The burden is on the defendant to establish lack of probable cause. The burden is on the defendant to establish prima facie. In this case, Mr. Perez testified at the beginning of the hearing, at the end of his testimony, the trial judge found that the defense had established the prima facie case and the burden had now shifted to the state. And she found probable cause. And there was no rebuttal. She found probable cause. Your Honor, that is correct. The court found probable cause. However, the finding was based on, was not based on the evidence presented at the hearing. The judge seems to have assumed that the dispatch was true. Can't one make a reasonable inference that the dispatch information was corroborated by what the officer witnessed when she approached the scene? If the evidence had shown that at the hearing, of course. But if you're honorable, let me review the evidence of what was over there. Go ahead. I'd like to hear that. Yeah. The dispatch said that the dispatch was, as Officer Phillips said, involved a hit and run accident in which there was an injured person lying in the roadway at this certain address. She received this dispatch when she was seven blocks away from the place, she said. Now, if this were, if the dispatch were true, as Your Honor, as Your Honor said, you would, you would not expect the driver to still be there when the police officer arrived. But Phillips testified that the people she chased were right by this tunnel that was parked in the road and were just starting to leave from there. You'd also expect the officer to notice an injured person lying in the road, if that's what the dispatch, if that's what the dispatch says. But she doesn't testify that she did. Now, the comment. She doesn't testify that she didn't, either, does she? She doesn't say anything at all about an injured person. She says she arrived, she got out of her, she was getting out of her car, she saw these people starting to leave, and she heard somebody say, that's them. That's them what? We don't have any evidence, actually, to confirm that there was even an accident here. Nobody said that they saw any damage to the tunnel or that they saw an injured person in the road. So the first part to be established is that there was even an offense happened. Now, something was plainly happening. It's 430 in the morning, and there's a crowd of people gathered around a car out on the street. This was a Saturday night, early Sunday morning. And she was called to dispatch to that event. She was dispatched to a hit and run. Well, the dispatch was to a personal injury accident. Well, she testified, and I quote here, involving a hit and run accident in which there was an injured person lying in the runway. That's what she said it was. And so the offense that they wanted to enter the house to arrest him for was leaving the scene of an accident where there was injuries. Let's also note that the defendant was never charged with leaving the scene of an accident with injuries. He was charged with, eventually he was charged with DUI and driving without a driver's license. And there's no mention of any injuries in the charge. All right, but then furthermore, so the first question is did an offense occur at all? And the second question for probable cause or even reasonable suspicion is why do we think that the defendant did it? The people at the scene said that's them. That's them what? If we don't really know why the people were gathered around the car, maybe it was an accident, maybe it was a fight. We know that these two people started running once the police officer got there, although she said she came without her lights, without her emergency lights on. And it was dark out, so we don't necessarily know that the person knew the police had come. But they started leaving anyway when the police officer arrived, which could be grounds to chase based on ward level and so on, running for a police officer. But there's no testimony that the circumstances that Wardlow requires a high crime area. There's no testimony that this place, this neighborhood is a high crime area. Yeah, but wouldn't it be a little differently if she were driving down the street and she comes upon a car in the middle of the road and a bunch of people standing around yelling, that's them, that's them. As opposed to the fact that she was dispatched to this area. Don't they kind of go hand in hand? Sure. As your Honor wrote in Lindley, since the officer was responding to a dispatch, if we're going to use the dispatch, there has to be, the state is obliged to show that whoever ordered the dispatch was relying on some credible information. The dispatch in Lindley was in an area where, the dispatch in Lindley was kind of to a general area where shots were fired. Wasn't the dispatch in this case to a specific area? I believe it was, that's correct. So it's different in that respect. But still the question of what was happening at this area is the essence of the thing, because they wanted to arrest this man for leaving the scene of an accident with injuries. We know something was happening. Could have been that. Could have been something entirely different. We have zero information, as in Lindley, about the reliability of whoever was reporting that there had been an accident with injuries. Can I ask, let me ask this question. Please. And again, we are reviewing the evidence and look at this issue as to whether or not there's probable cause under what standard of review? What's the standard of review? The court found probable cause. How should we look at that issue? The standard of review, of course, is whether the court's finding is contrary to the manifest way of the evidence. But even with proof beyond a reasonable doubt, which is a higher standard, there has to be some evidence to support it. And that's what's lacking here. Not only was there not probable reason to assume that there had been an accident with injuries, there's not probable cause, or even reasonable. There's not probable cause that Mr. Perez was the driver of this car. At the scene they said that's them, but didn't say what. So, okay, so even if we assume, for the sake of argument, that they were meeting the drivers, there was two of them. You don't typically have two drivers in a car. The officer caught one of them, and he said, it's not me, it's my brother. What's not me? My brother. We don't know why he thought who his brother was. There's no evidence that Mr. Perez was his brother, and we don't know what he thought his brother did, why the police were chasing him. Yes, sir. Let me ask this question. You're looking at each piece separately, and you're doing a good job at each piece and saying this isn't probable cause, this isn't probable cause. But isn't a trial court, in looking at whether or not there's probable cause, supposed to use a common sense and not a hyper-technical view of the evidence and look at all the information available to the officer at the time that, in this case, entry was made and the arrest was made? It's all the information, and not in a hyper-technical way, but in the way an objectively reasonable police officer would look at the evidence in those circumstances. Isn't that the way we should view this? Certainly, Your Honor. The test is the totality of the circumstances. But in looking at the totality of the circumstances, you have to look at what they add up to. And when you have as many gaps, there's so many problems with probable cause here, it's hard for me to know where to begin. How about the conversation with the brother when Officer Phillips tells the brother after he says, it's not me, it's my brother, and she tells him, go back to the scene of the accident and give your information. Doesn't that provide her now confirmation that there was indeed an accident and that it's not him, it's the brother who fled? No, because she did, it's undisputed that she heard this dispatch that there was an accident. And furthermore, why does she believe him? We don't even know this man's name. But the conversation, I'm talking about the conversation with the brother in the snow, in the backyard, when she tells him, you go back to the scene of the accident and provide the information. We know that she thought there was an accident, certainly, because she had a dispatch. She tells him that, and he doesn't respond to it. Isn't it reasonable for her to infer that, yes, indeed, there was an accident and the person I'm pursuing is the driver who's now fled? Well, he says, it's not me, it's my brother. One, we don't know who his brother is, and two, he's got a big motive to not tell the truth here. That's a separate part of the conversation. So now she has to decide who's telling the truth and not telling the truth? Well, if we're trying to base probable cause on this, yes. She has to have some basis, at least, for making a determination. And when he says, it's not me, he doesn't say, it wasn't me who was driving. He just says, it's not me. We don't even know why he thinks the police are chasing him, really. She then tells him, I'm sorry. She then tells him, go back to the scene of the accident and provide your information. Isn't that a tacit admission or enough information for her to confirm that there was indeed an accident and she now has to continue her pursuit of the driver? Well, as I said, Your Honor, we know that the officer had this dispatch. She thought that there was an accident. That's certainly undisputed. The question is whether there was evidence. One of the many questions is whether there actually was and whether there was an injured person lying in the road as the dispatch said. We know the officer thought that. And as for the person's response, that would have been hearsay evidence anyway. We just don't have if he responded at all. We don't know. And we don't know whether he went back there or what he did. We have the unrebutted testimony from the officer that that's what occurred, that was the conversation. And we have the unrebutted testimony that she said go back to the accident and it's completely undisputed that she thought there had been an accident because that's what she had been dispatched for. So are you saying that Mr. Perez may be guilty of something but not necessarily of leaving a hit-and-run accident? Well, I don't even know whether he's guilty. But even assuming he's guilty of something because he's running, it's not necessarily what she was called to the area for. And the other question that we get to in order to answer your question is, is the man that she saw on the porch even one of those she was chasing? Because she identifies the man she saw on the porch as the defendant. She doesn't inquire identification of him, says he was wearing a blue shirt. But earlier on she was asked, what were the people you were chasing wearing? And it was dark, it was 4.30 in the morning in February. And she says, I can't say what they were wearing. So one, we don't know whether of the two he was the driver, and two, we don't even know whether he was one of the two. Because she lost sight of him for a while. She spent about two minutes questioning the first guy she caught. As Your Honor said, a person can go a long way in two minutes if he's running. There's a big gap here in this pursuit, which is why under Welsh v. Wisconsin, the U.S. Supreme Court hot pursuit case, this does not qualify as hot pursuit for exactly this reason. It wasn't continuous, which is one of the requirements for hot pursuit. So you disagree with the trial court when they say there was probable cause? Yes, Your Honor. I disagree with that. There was no, although the court found it, it wasn't supported by the evidence. But the court also found that there weren't, it was not a grave offense. Do you agree that you don't need to have a grave offense based on where? I think where is, I think I have to agree with my colleague over here that the grave offense is one of the things that, as in Holloway, a murder or something, or one of the factors, but I don't know. I don't want to stand on that, that it has to be a grave offense. More important is the trial court's finding, and now I like the trial court's finding, and I want to, and it is supported by the evidence, that the police did not enter this house in order to protect the people inside. And that finding was supported by evidence. Now, Officer Barnard said that that is why he entered, but Officer Phillips said that she had no information that the people inside were in danger. It's undisputed that this man on the porch, the defendant, was knocking on the door and that he was admitted voluntarily into the house. Who entered first? I'm sorry? Who entered first? I think the record shows that Barnard entered first through the basement and then he radioed up to Phillips and said, I got in through the basement. She stayed up, she said, five minutes knocking on the door on the porch, and then she came down and went into the basement after she got this radio call from the other officer. Was there any reason to believe the defendant was armed or dangerous? Do you agree with counsel that under these circumstances that he was dangerous? No. There's absolutely no indication that he was armed or dangerous. This was a traffic accident that they were investigating. There's no indication of any kind of intentional violence over here. The man that she caught, one, she let him go. She didn't find anything on him. There's no suggestion that the man was dangerous. He was voluntarily admitted to the house. Okay. And looking at the question of whether or not there were exigent circumstances, do we look at the subjective state of mind of the officer or do we look at what a reasonable person would say, reasonable officer? I think the law is pretty clear that we have to look at whether his, one, whether he had the subjective belief and, two, whether the subjective belief was based on any objective. Here we don't even reach the question of whether it was based on anything objective because the trial judge found that he didn't even have the subjective belief that the people were in danger. The judge didn't believe him, and the judge's finding is not contrary to the manifest way of the evidence, and therefore there are multiple reasons why the trial court's order should be affirmed. Do you want to comment on Holloway briefly? Okay. In Holloway, the police had a report from a neighbor that there was gunshots and arguing coming from the next residence. When they got there, they found spent shotgun shells on the porch, and then they entered. And Holloway is all about an entry for the purpose of protecting human life. That's come throughout Holloway. Here we have no indication whatever that any human life was endangered in any way. There was a man knocking on the door at 4 a.m. That's true, but he was also voluntarily admitted. There was no indication of shots. And the people in the house knew how to keep somebody out. They didn't let the police in who were knocking on the door after that. How did the police know that they didn't have a gun to their head or weren't holding them hostage not to let the police in? Well, it's the state's burden of proof in the trial court in order to show an exigency, and they didn't suggest that. There's nothing to suggest. I don't think even the state argued that. The only argument is that he was dangerous because he was fleeing a traffic accident, but nobody suggests that he was armed or threatening the people in the house. Any other questions? Thank you, counsel. Mr. McNeil. First, there was testimony, specific testimony that they did fear for the safety of the people in the house and that they specifically didn't think that it was defendant's house that he was going into. I'm sorry, I didn't hear what you just said. I'm sorry. Specifically, they specifically said that they feared for the safety of the people in the house and that they didn't think that it was defendant's house that he was running into. Couldn't they have watched over the house, ran a check to determine who owned the home, maybe got a warrant, gathered some information? I mean, it's pretty much a stretch and pretty important that you don't just bust into someone's house. Isn't that what you're trying to tell us? Well, if they were in danger, then I would think that they would want them to just bust into the house pretty quickly. If somebody just busted into my house at 430 in the morning, I wouldn't want them to wait and make sure that it wasn't his house. It's certainly good information the person was armed and dangerous, correct? Correct. And I think they had a ton of that information here. I think that there needs to be a distinction between armed and dangerous. Just because there's no reasonable belief that they're armed doesn't mean that there isn't a reasonable belief that someone's dangerous. Armed or dangerous. Or dangerous, agreed. Did they have any information in this particular fact pattern that he was either armed or dangerous? I think that looking at the totality of the circumstances, there was a reasonable belief that he was dangerous, considering flight from the officers and the time of night and the way and manner that he gained entry into the house. Without a weapon, what would he do? I mean, how do you get to the dangerous part? Just running from the scene into somebody's house makes somebody dangerous? Without knowledge that he was armed? Obviously, he's evading police, so there's not respect for the law at that time. So he could just sit down and breathe a sigh of relief once he got inside the house. How would that make him dangerous? Well, he's running from the police, and if it's not his house, then presumably he would do what he needed to do to ensure that the people whose house it was wouldn't let the police in or it wouldn't cause a scene. So he was armed for a home invasion? Correct. And Justice Berkett is correct, and you have to look at the totality of the circumstances with common sense. The crowd yelling, that's them, that's them, you wouldn't expect a crowd to specifically say, that's them, violating ILCS 4-1302, leaving the scene of an accident. Those two gentlemen right there, they yell, that's them. But I'm having a little bit of a problem. Maybe you can help me out with something that Justice Denoff pointed out. She received this dispatch, and she was some eight blocks away, and they said there was somebody who was fleeing from the scene of a personal injury accident. If they had fled, wouldn't they have fled prior to a police officer getting there? They weren't that far from the scene at the point that she got there, were they? Seven or eight blocks, I think that actually lends support to the credibility of that testimony, that there was sufficient, not too much time, but sufficient time for someone to return back to what happened, especially if there's a car parked there anyway in the middle of the road. So you're saying they would have fled and turned back and run back to where the car was and then left? Well, if their car was still there, And they're trying to leave the scene of an accident, and you're saying we should assume that they came back and then left a second time? The reason they would have left a second time is because they left quickly when they saw the police. The Lindley opinion states that it's not sufficient in and of itself to support an investigatory stop, but flight from an officer is a significant factor to be considered as part of the totality of the circumstances. In Lindley, I think they just thought about, or the police officer testified that they looked like they might have thought about running at some point. Here, there's obvious flight from the police as soon as the police show up at the scene. Maybe they didn't think police were going to show up that quickly, or maybe they didn't think police were going to show up at all to return back to the scene to see what happened. As soon as the police show up, they leave. I think that's a reasonable inference for the police to make. Is there any information establishing the reliability of the dispatch itself? Do we know the source of the call, the 911 call? Who called it in? Under what circumstances? Isn't that required under Lindley also? Well, I think, again, Lindley says that if the officer is aware of facts, they need to corroborate the tip. I think as soon as they show up, the corroboration starts to add up in the group around the SUV parked in the middle of the road, flight from the officers. But counsel indicated that that could also be consistent with a fight, correct? People gathered there was some sort of fight. That's equally consistent. Well, I think you have to give some weight to the fact that there was a dispatch of a personal injury accident, and I think that it would be more reasonable to think that it was a scene of a personal injury accident than a scene of a fight. But no victim was ever seen, or there was no testimony that anybody saw that?  Again, there was no denial of victim, but Officer Bernard said that Officer Phillips stated the victim of the accident was getting medical treatment. So there was a slight bit that there was a victim at the hearing. There was a slight bit of information on that. Thank you very much, counsel. At this time, the court will take the matter under advisement and render a decision in due course. Court is adjourned for the day.